IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| MARISSA JENKINS, <br><br> Plaintiff, <br><br> v. <br><br> GAYLORD ENTERTAINMENT COMPANY, <br><br> Defendant. | Civil Action No. 8:11-cv-02869-AW <br><br> Related action: <br><br> 10-00633-AW |

**MEMORANDUM OPINION**

Plaintiff Marissa Jenkins brings this action against Defendant Gaylord Entertainment Company (Gaylord). Jenkins asserts claims for racial/national origin discrimination and retaliation under 42 U.S.C. § 1981 and the Fourteenth Amendment. Presently pending before the Court is Gaylord's Motion to Dismiss. The Court has reviewed the entire record and deems no hearing necessary. For the reasons articulated herein, the Court **GRANTS IN PART AND DENIES IN PART** Gaylord's Motion to Dismiss.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Marissa Jenkins asserts this employment discrimination action against her former employer, Defendant Gaylord Entertainment Company (Gaylord). Jenkins asserts claims under 42 U.S.C. § 1981 and the Fourteenth Amendment for racial discrimination and retaliation. To appreciate the viability *vel non* of Jenkins's § 1981 claims, the Court must provide background concerning the related action.

In the related action, Jenkins asserts claims for national origin discrimination and religious discrimination. Jenkins moved in the related action to amend her complaint by way of

1

adding a retaliation claim. The Court recently issued a Memorandum Opinion and Order in which it denied Jenkins's motion for leave to amend her complaint. *See Jenkins v. Gaylord Ent. Co.*, No. 10-cv-00633-AW, Docs. 30–31 (D. Md. Dec. 23, 2011).

Gaylord opposed Jenkins's motion for leave on two primary grounds. The first ground was that Jenkins had not shown good cause under Rule 16 for the Court to modify the amended scheduling order that the Court issued on April 28, 2011. *See id.*, Doc. 15. The Court declined to address this argument in that Gaylord's second ground was dispositive. Gaylord argued that the Court would improperly grant Jenkins's retaliation claim because it was futile within the meaning of Rule 15(a). The Court agreed with this argument and denied Jenkins's motion for leave. *See id.*, Doc. 30 at 4–6.

Jenkins filed her motion for leave in the related action on July 6, 2011. *Id.*, Doc. 16. On August 22, 2011, while Jenkins's motion for leave pended in the related action, Jenkins filed the instant action in the Maryland state court. *See* Doc. 1. Gaylord removed the action to this Court roughly two weeks later. *Id.* The following week, Gaylord filed a Motion to Dismiss for Failure to State a Claim (Motion to Dismiss). Gaylord makes two main arguments in its motion to dismiss. First, Gaylord maintains that the Court should dismiss the instant action as duplicative of the related action. Second, Gaylord contends that Jenkins's § 1981 retaliation claim is time-barred. The Court turns its consideration to these arguments and other pertinent matters.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases

make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In the context of employment discrimination, the Supreme Court has clarified that pleadings need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002). To require otherwise would essentially create a "heightened pleading standard" under which a plaintiff without direct evidence of discrimination would need to plead a prima facie case even though she might uncover direct evidence during discovery. *Id.* at 511–12. This would create the "incongruous" result of requiring a plaintiff "to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered." *Id.* Furthermore, before discovery,

3

"it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512; *see also Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewicz* is consistent with *Twombly*'s facial plausibility standard).

## III. LEGAL ANALYSIS

### A. Whether the § 1981 Retaliation Claim Is Timely

Section 1981, originally enacted by Congress in 1866, pertinently provided that all people shall enjoy "the same right . . . to make and enforce contracts." *See* Civil Rights Act of 1866 § 1, 14 Stat. 27, 27 (codified as amended at 42 U.S.C. § 1981). The Supreme Court narrowly construed § 1981 in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1074, *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). The *Patterson* court held that § 1981 applied only to discrimination in "the formation of a contract," not to post-formation discrimination such as the failure to promote or hostile work environment. *Id.* at 176. *Patterson* similarly sounded the death knell for § 1981 retaliation claims as such claims involve post-formation discrimination. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 449 (2008).

Dissatisfied with the *Patterson* court's narrow construction of § 1981, Congress amended the statute in 1991. *See* Civil Rights Act of 1991 § 101, 42 U.S.C. § 1981. Congress added "a new subsection to § 1981 that defines the term "'make and enforce contracts'" to include the 'termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Jones*, 541 U.S. at 373 (citing 42 U.S.C. § 1981). One upshot of this statutory change is that, in derogation of *Patterson*, plaintiffs may assert retaliation claims under § 1981. *See Humphries*, 553 U.S. at 457.

4

Gaylord does not dispute that § 1981 embraces retaliation claims. Instead, Gaylord maintains that the Court must apply Maryland's three-year statute of limitations for personal injury actions. *See* Md. Code, Cts. & Jud. Proc. § 5-101. Gaylord observes that it terminated Jenkins on August 20, 2008 and that Jenkins did not file the instant action until August 22, 2011. Based on this time span, Gaylord concludes that the instant action is time-barred. Apparently conceding that Maryland's three-year statute of limitations applies, Jenkins argues that Gaylord incorrectly applies § 5-101 and Maryland Rule 1-203(b).

Maryland Rule 1-203(b) deals with the computation of time in determining "the latest day for performance of an act which is required by . . . any applicable statute." Md. R. 1-203(b). Under Jenkins's reading of this Rule, she had until August 22, 2011 to file her § 1981 claim. In reply, Gaylord cites a line of cases discrediting Jenkins's interpretation of Rule 1-203(b) as it relates to § 5-101.

In quibbling over the meaning and mechanics of these authorities, the Parties overlook the elephant in the room: the *four-year* statute of limitations that 28 U.S.C. § 1658 prescribes applies to § 1981 retaliation claims. *See Jones*, 541 U.S. at 382. In *Jones*, the Supreme Court held that § 1658's four-year statute of limitations governs a plaintiff's claim if a post-1990 congressional enactment makes the claim possible. *Id.* Thus, the dispositive question is whether a post-1990 congressional enactment made possible Jenkins's retaliation claim.

As alluded to above, the answer to this question is a resounding "Yes." *See Humphries*, 553 U.S. at 450–51. In *Humphries*, the Supreme Court concluded that § 1981 comprehends retaliation claims. *Id.* at 457. In reaching this conclusion, the Court traced § 1981's interpretive history. *See id.* at 446–52. This history revealed that, whereas *Patterson* foreclosed § 1981 retaliation claims, the Civil Rights Act of 1991 reopened the door to them. *See id.* at 450–52.

Thus, as § 1981 is a post-1990 enactment, § 1658's four-year statute of limitations controls. *See Jones*, 541 U.S. at 382. This being so, Jenkins's § 1981 retaliation claim is timely as she filed it around three-years after it accrued.[1]

**B.     Whether the § 1981 Claims are Duplicative**

Gaylord invites the Court to dismiss Jenkins's § 1981 claims as duplicative. The Court disagrees that Jenkins's § 1981 retaliation claim is duplicative. The Court agrees, however, that Jenkins's § 1981 racial discrimination claim is duplicative and, therefore, dismisses it.

*1.     § 1981 Retaliation Claim*

Jenkins's § 1981 retaliation claim is not duplicative. To fully appreciate why this is so, the Court must discuss the related action's factual and procedural background in greater detail. As stated above, Jenkins moved the Court for leave to amend her complaint in the related action by way of adding a Title VII retaliation claim. The Court recently issued a Memorandum Opinion and Order in which it denied Jenkins's motion for leave. *See Jenkins*, No. 10-cv-00633-AW, Docs. 30–31.

Gaylord opposed Jenkins's motion for leave on two primary grounds. First, Gaylord argued that Jenkins had not shown good cause under Rule 16 for the Court to modify the amended scheduling order that the Court issued on April 28, 2011. *See id.*, Doc. 15. The Court declined to address this argument given the merit of Gaylord's second ground.

By its very terms, this decision does not imply that Gaylord's first ground was sound. Indeed, it does not appear that Gaylord could have prevailed on this ground. In the related action, Gaylord moved for an extension of time for discovery and dispositive motions. *Id.*, Doc. 10. The

---

[1] The Court opts not to address whether Ms. Jenkins's hybrid § 1981 national origin/racial discrimination claim is time-barred as the Court disposes of this claim on other grounds. *See infra* Part III.B.2.

Court granted this motion and ordered the Parties to propose an amended scheduling order, which the Parties did on April 28, 2011. *See id.*, Docs. 14–15.

Pursuantly, the Parties engaged in supplemental discovery. Gaylord produced an email during this period that is probative of retaliation. *See id.*, Doc. 16-6. Jenkins sent the email to her supervisor, Nancy Guerrero, on August 11, 2008. *Id.* In pertinent part, the email states that "I am filing [d]iscrimination." *Id.* Two days later, Guerrero participated in a decision to suspend Jenkins for five days. *See id.*, Doc. 16-7. Gaylord terminated Jenkins just a few days later.

Despite these developments, Gaylord urged the Court to deny Jenkins's motion to amend for four reasons. First, Gaylord argued that Jenkins manifested carelessness and lack of diligence in investigating her retaliation claims. Second, Gaylord maintained that Jenkins could not show good cause for modifying the amended scheduling order because she waited for two months before seeking leave to amend her complaint. Third, Gaylord asserted that allowing Jenkins to amend her complaint would not serve the ends of justice. Finally, Gaylord contended that modifying the amended scheduling order would prejudice it. *See id.*, Doc. 21 at 5–11.

The Court disagrees for several reasons. Gaylord's arguments share a common flaw. Jenkins learned of the email in a supplemental discovery period that Gaylord requested. In other words,

> It is hard to fathom how on the one hand, [Gaylord] can justify good cause . . . to amend the scheduling order, but on the other hand, deny that there is good cause for the Plaintiff to amend the complaint based on the very evidence that the [Gaylord] failed to produce.

*Id.*, Doc. 22 at 1. Gaylord also seems to ignore that the amended scheduling order contained no deadline for amended pleadings. *Id.*, Doc. 15. Even if the Court incorporated the deadline from the initial scheduling order into the amended scheduling order, it is still hard to fathom how allowing Jenkins to amend her complaint to conform to evidence that Gaylord produced during

7

the extended discovery that it asked for could be prejudicial. Quite contrarily, one could argue that this result would give Gaylord an undeserved advantage. Such an outcome would fly in the face of Rule 15's mandate that courts " should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Likewise, the Court rejects the notion that Jenkins was careless in investigating her claims. Evidently, Jenkins sent the email from her work account, to which she lacked access after Gaylord suspended and terminated her. Furthermore, Jenkins is a layperson. Even assuming she was aware of the email (and the record does not indicate she was), she conceivably was oblivious to its evidentiary value.

The argument that Jenkins cannot show good cause because she failed to move to amend for two months after discovering the email is also unpersuasive. Jenkins discovered the email on May 5, 2011. The amended scheduling order set a discovery deadline of July 26, 2011 and a dispositive motions deadline of August 25, 2011. *Id.*, Doc. 15. Granted, this delay is a hair long on its face. However, given the unusual manner in which the email came to light, it was within the realm of sound strategy for Jenkins to wait for further developments before moving to amend. Additionally, Jenkins filed her motion for leave one month before the amended scheduling order's dispositive motions deadline. Subsequently, the parties jointly moved to extend the amended scheduling order's remaining deadlines, which included both the discovery deadline and the dispositive motions deadline. The Court approved the Parties' consent motion. *See id.*, Docs. 19–20. In the end, Gaylord did not move for summary judgment for more than two months after Jenkins moved to amend. It is plausible that the Court might have ruled on Jenkins's motion to amend in the intervening time.

Gaylord's arguments also pay short shrift to the email's probative value. In the instant action, the complaint asserts a § 1981 retaliation claim. Jenkins asserts the retaliation claim partly by virtue of the email and her ensuing suspension and termination. *See* Doc. 1 at 6–7. It is beyond peradventure that these acts, coupled with the complaint's other allegations, suffice to state a cognizable retaliation claim under § 1981.

It is well-settled that the elements that plaintiffs must satisfy to state a prima facie case of retaliation under § 1981 equal the elements of a prima facie case of retaliation under Title VII. *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993) (citation omitted); *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (citations omitted). To state a prima facie case of retaliation under Title VII, a plaintiff must establish: "(1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection exist[s] between the protected activity and the adverse employment action." *Tasciyan v. Med. Numerics*, Civil Action No. 11-1467 AW, 2011 WL 5119465, at * 8 (D. Md. Oct. 28, 2011) (citing *Davis v. Dimensions Health Corp.*, 639 F. Supp.2d 610, 616–17 (D. Md. 2009)). "An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits." *Id.* (citing *Davis*, 639 F. Supp.2d at 617). "One court has defined opposition as 'utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.'" *Id.* (quoting *Davis*, 639 F. Supp.2d at 617)). "For such activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct [] she opposes constitutes unlawful discrimination under Title VII." *Id.* (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)). "Opposition almost always arises when an employee communicates to her employer her

reasonable belief that the employer has engaged in discrimination." *Id.* (citing *Crawford v. Metro. Gov't of Nash. and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)).

As for element (3), temporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a prima facie case of causation where the temporal proximity is "very close." *See Breeden*, 532 U.S. at 273–74 (citations omitted). To be sure, plaintiffs may state a prima facie case of causation by relying on evidence other than, or in addition to, temporal proximity where such evidence is probative of causation. *Cf. id.*; *Clark v. Sunipa II Inc.*, Civil Action No. 8:10-cv-02027-AW, 2011 WL 5439000, at *5 (D. Md. Nov. 8, 2011); *Tasciyan*, 2011 WL 5119465, at *9; *Westmoreland v. Prince George's County, Md.*, Civil Action No. 09-CV-2453 AW, 2010 WL 3369169, at *9–12 (D. Md. Aug. 23, 2010).

In view of this authority, Jenkins has unquestionably stated a facially plausible claim of retaliation. Summarizing the complaint, Jenkins alleges that Guerrero called her racial slurs and singled her out for mistreatment, then suspended and terminated her once she complained about discrimination. *See generally* Doc. 2. The August 11 email is particularly probative of retaliation. The email unequivocally states that "I am filing [d]iscrimination," and hence, constitutes communication of her belief that she was experiencing discrimination to Gaylord. In light of the racial remarks and other allegations, the complaint sufficiently states that Jenkins held a reasonable belief of discrimination. Furthermore, as it is "very close," the two-day span between Jenkins's opposition and her suspension suffices to state a cognizable causation claim. In short, as enhanced by the email, the facial plausibility of Jenkins's § 1981 claim further discredits the idea that it is duplicative.

Gaylord argues that the retaliation claim is duplicative because it arises out of the same operative facts as the claims in the related action (i.e. religious and national origin discrimination under Title VII). Gaylord relies on one case for this proposition. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp.2d 574 (D. Md. 2004). Although *Sensormatic* accurately states the law of claim-splitting (i.e. duplication), Gaylord's reliance on *Sensormatic* is misplaced.

In *Sensormatic*, the plaintiff brought a second breach of contract action against the defendant even as the plaintiff's original breach of contract action against the same defendant was pending. *See id.* at 576–77. The defendant moved to dismiss partly on the ground that the second breach of contract action duplicated the first. *Id.* The plaintiff noted that the court had already denied the defendant leave to amend its complaint in the first suit to add the breach of contract claim that it asserted in the second suit. *See id.* at 579–80.

In the first suit, the defendant sought to amend its complaint because it had discovered evidence that the plaintiff had violated a particular paragraph of the contract. *See id.* at 576–77. The court denied the defendant's motion because, even though the defendant discovered the evidence a month before the scheduling order's deadline for amendments, the defendant failed to seek leave to amend for two-and-a-half months after the deadline. *Id.* at 577.

Based on this background, the *Sensormatic* court held that the breach of contract claim the defendant asserted in the second suit was duplicative. *Id.* at 580. In so holding, the court stressed that the contract was the "factual predicate" of the claims in both suits and that the claims in the second suit "could have been heard by the court in the earlier case had the motion to amend been timely." *Id.* Consequently, the court granted the plaintiff's motion to dismiss as to its claim-splitting argument. *Id.*

One can easily distinguish the instant action from *Sensormatic*. Unlike the scheduling order in *Sensormatic*, the amended scheduling order in this case contained no deadline for amended pleadings. Therefore, in contrast to *Sensormatic*, Jenkins could not have discovered the email before the amended scheduling order's deadline. Likewise, even if the initial scheduling order's deadline for amendments was incorporated into the amended scheduling order *sub silentio*, Jenkins still discovered the email *after* the deadline for amendments, not *before* as in *Sensormatic*. Granted, this would mean that Jenkins would have filed her motion for leave almost a year after the initial deadline. Yet this interval is inconsequential in that Gaylord solicited the supervenient discovery period, pursuant to which it produced an email that Jenkins had effectively requested before the initial deadline. Furthermore, whereas the defendant in *Sensormatic* knew of the key evidence for three-and-a-half months before seeking leave to amend, Jenkins knew of the email for only two months. Accordingly, although the instant action subsumes many of the related action's "factual predicates," Jenkins simply has not shown neglect similar to that which the defendant in *Sensormatic* evinced.

Another critical distinction between the instant action and *Sensormatic* bears emphasis. In *Sensormatic*, the defendant asserted the same claim for which the court denied its motion to amend in the first suit. In this case, by contrast, Jenkins asserts a legally distinct claim. Whereas Jenkins sought to add a Title VII retaliation claim in the related action, Jenkins asserts a § 1981 retaliation claim in the instant action. Although the same evidentiary framework applies to Title VII and § 1981 claims, the two causes of action bear important differences. *See, e.g.*, *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. 1997) (comparing and contrasting Title VII and § 1981); *see generally* Joel Wm. Friedman, Employment Discrimination: Examples and Explanations 221–26 (2010) (same). Relevantly, while Title VII requires plaintiffs to exhaust

administrative remedies, § 1981 claimants face no such obstacle. *See Humphries*, 553 U.S. at 454–55; *Qualls v. Giant Food, Inc.*, 187 F .Supp.2d 530, 534 (D. Md. 2002). In the related action, the court denied Jenkins's motion for leave because the amendment would have been futile insofar as she failed to exhaust administrative remedies. *See Jenkins v. Gaylord Entm't Co.*, No. 8:10-cv-00633-AW, 2011 WL 6755158, at *2–3 (D. Md. Dec. 23, 2011). In this case, however, no such hurdle hampers Jenkins's § 1981 claim. Thus, unlike the *Sensormatic* defendant's second breach of contract claim, Jenkins's § 1981 retaliation claim is sufficiently distinct from her Title VII retaliation claim that the former fails to duplicate the latter.

In light of the preceding discussion, Gaylord's argument that Jenkins's § 1981 claim constitutes a thinly veiled attempt to circumvent the Court's decision in the related action proves too much. Accordingly, the Court denies Gaylord's Motion to Dismiss as to the argument that the § 1981 claim contravenes the rule against claim-splitting.

2.  *§ 1981 Hybrid National Origin/Racial Discrimination Claim*

In Count I of her complaint, Jenkins asserts a § 1981 claim for "discrimination based on national origin." Jenkins's choice of this language is perplexing in that the Supreme Court has held that parties may not assert discrimination claims based on national origin under § 1981. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). The *Al-Khazraji* court held that Congress intended § 1981 "to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.* This protection does not include discrimination based "solely on the place or nation of [the plaintiff's] origin." *Id.*; *see also id.* at 614 (Brennan, J., concurring) (reading the majority's opinion to hold only that "discrimination based on *birthplace alone* is insufficient to state a claim under § 1981").

13

Yet this oversight, per se, does not vitiate Jenkins's self-styled § 1981 national origin claim. The complaint contains numerous allegations sounding in racial discrimination that Jenkins incorporated into Count I. *See* Doc. 2 at 2–4, ¶¶ 11–14, 18, 20, 25. Similarly, Jenkins bases her § 1981 retaliation claim on allegations that she opposed "a practice of racial . . . discrimination" and that she reasonably believed that Gaylord discriminated against her "based on her . . . race." *Id.* at 6–7, ¶¶ 47, 49. Thus, construing the complaint liberally, Count I asserts a claim for racial discrimination. *Cf. Perkins v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, Civil Action No. DKC-08-3340, 2010 WL 889673, at *5 (D. Md. Mar. 5, 2010) (dismissing a § 1981 claim that the plaintiff plead as one for "national origin" partly because "[a]t no time [did the] Plaintiff raise[] any allegations of racial discrimination as a ground for relief").

All the same, Jenkins's § 1981 racial discrimination claim fails for duplication. The doctrine of duplication dictates that courts "assess whether the second suit raises issues that should have been brought in the first." *Sensormatic*, 329 F. Supp.2d at 579 (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2000)). As a general matter, the second suit duplicates the first where it (1) arises out of the same operative facts and (2) the interests of judicial economy and avoiding vexatious litigation outweigh the plaintiff's interest in bringing the second suit. *Cf. id.* & n.4.

In the instant action, Jenkins bases her § 1981 racial discrimination claim on the same facts on which she based her national origin claim in the related action. Although the complaint in the second suit contains added allegations about the email, the email is less probative of racial discrimination than it is of retaliation. *Cf. Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 867–86 (2011) (noting that an employer fired a female employee's boyfriend after she filed a

charge of sex discrimination and holding that the employee's boyfriend could state a claim of retaliation on these facts).

Likewise, the interests of judicial economy and avoiding vexatious litigation outweigh Jenkins's interest in asserting the § 1981 discrimination claim in a separate suit. To reiterate, Jenkins bases the § 1981 racial discrimination claim on the same facts as the Title VII national origin claim. Indeed, as discussed above, Jenkins labeled her § 1981 racial discrimination claim as a national origin claim. Thus, unlike the § 1981 retaliation claim, Jenkins has no justification for failing to move to amend by the deadline that the original scheduling order set. In short, the vexation that letting Jenkins pursue this claim would lead to outweighs any prospect of recovery that the § 1981 racial discrimination claim promises. Furthermore, Jenkins's assertion of the § 1981 racial discrimination claim this late in the litigation hinders judicial economy. Regardless of their similar factual footing, the § 1981 discrimination claim and Title VII national origin claim are distinct both doctrinally and dialectically. Hence, empowering Jenkins to prosecute her § 1981 claim portends to produce more work for the Court, thereby prolonging the case. That Jenkins's § 1981 retaliation claim promises as much heightens these concerns. Accordingly, the Court dismisses Jenkins's self-styled § 1981 national origin claim as duplicative.

C. **Whether Jenkins Can Assert Claims of Racial/National Origin Discrimination and Retaliation Under the Fourteenth Amendment**

The Court summarily dismisses Jenkins's Fourteenth Amendment claims for want of state action. That the Fourteenth Amendment prohibits only state action is a time-honored principle. *United States v. Morrison*, 529 U.S. 598, 621 (2000). "[T]he principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States." *Id.* (citing *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). The corollary is that the Fourteenth

Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Id.* (citing *Shelley*, 334 U.S. at 13); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974) (holding that there must be a "sufficiently close nexus" between the state and the private entity's contested action such that the private entity's action "may be fairly treated as that of the [s]tate itself").

In this case, Jenkins does not allege that Gaylord's conduct amounts to state action and the complaint does not lend itself to this inference. Nor does Jenkins allege the existence of a close nexus between Gaylord's conduct and the state of Maryland or the United States. Jenkins simply states that Gaylord is a Tennessee corporation that operates a hotel located at National Harbor and discusses the actions of its employees. *See generally* Doc. 2. As a matter of law, these allegations fail to support the inference that Gaylord's conduct amounted to state action. Accordingly, the Court dismisses Jenkins's Fourteenth Amendment claim.

D.     **Whether the Instant Action and the Related Action Should be Consolidated**

Jenkins requests the Court to consolidate the instant action with the related action. Gaylord has not expressly opposed this request. Federal Rule of Civil Procedure 42 provides that courts may consolidate actions that "involve a common question of law or fact." *See* Fed. R. Civ. P. 42(a). At a minimum, Jenkins's § 1981 retaliation claim involves a common question of fact with her Title VII claims in the related action. Indeed, excepting the email, Jenkins based her § 1981 retaliation claim on essentially the same facts as she bases her Title VII claims. Therefore, the court consolidates the instant action with the related action.

IV.    **CONCLUSION**

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Gaylord's Motion to Dismiss. Consequently:

- The Court denies Gaylord's Motion to Dismiss as to Jenkins's § 1981 retaliation claim (Count II);

- The Court dismisses Jenkins's § 1981 national origin discrimination claim (Count I);

- The Court dismisses Jenkins's Fourteenth Amendment claims.

In addition, the Court consolidates the instant action with the related action (10-cv-00633-AW). A separate Order follows.

| January 3, 2012 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |